# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

| | |
|---|---|
| **CAROL HESTER** | **PLAINTIFF** |
| **V.** | **CAUSE NO. 3:16-CV-936-CWR-FKB** |
| **JACKSON PUBLIC SCHOOL DISTRICT; GERALD JONES; JERRY LUCKETT; & SAUNDRA LYONS** | **DEFENDANTS** |

## ORDER

The main dispute before the Court is the motion for summary judgment brought by the three individual defendants in this action: Gerald Jones, Jerry Luckett, and Saundra Lyons. Also pending, though, are plaintiff Carol Hester's motion to strike, her alternative motion for leave to file a sur-rebuttal, and the individual defendants' motion for leave to file excess pages. All of these will be addressed below.

## I. Factual and Procedural History

Carol Hester is a security guard for the Jackson Public School District. She says that for 16 years she was paid less than a similarly-situated, but less-experienced male security guard named John Banks. When Hester discovered the disparity, she filed this suit against JPS and the supervisory officials allegedly responsible for the gender discrimination. Her claims arise under the Equal Pay Act (EPA), Title VII, and the United States Constitution.

The pay disparity is not seriously contested. JPS initially paid Banks $0.42 an hour more than it paid Hester. Years later, JPS paid him $4.07 an hour more than her. That was approximately 150% of her hourly wage, for the same work.

In proceedings before the Equal Employment Opportunity Commission and this Court, JPS has produced a variety of explanations for the pay disparity.

JPS first told the EEOC that it paid Hester less because she was a part-time employee for a time. But Banks was also a part-time employee for a time—and he kept his regular hourly rate and benefits. (JPS now says that is not evidence of discrimination against Hester, but rather "that Mr. Banks arguably benefitted from a short-term coding error.")

JPS then told the EEOC that it paid Hester less because she was not certified. During a deposition, however, JPS's corporate representative admitted that Hester would have made the same amount even if she was certified.

JPS also told the EEOC that it paid Hester less because Banks worked an overnight shift for a time. Again, though, evidence from deposition testimony indicates that there was no pay differential for different shifts.

The evidence is not entirely one-sided. JPS contends that several years of the disparity can be justified by an old policy on how prior creditable service was calculated. Banks came to JPS with four years of prior creditable service, while Hester came to JPS with two years of prior creditable service. When these years of prior service are added to their years with JPS, Banks has been working in this field since 1996, and Hester has been working in this field since 1994. In other words, she has more years of relevant experience than he, and (one would think) should be treated with more seniority. Under JPS's old policy, however, each year of prior *outside* work was treated much more favorably than each year of work *with* JPS. JPS accordingly says that Banks' additional two years of non-JPS work experience entitled him to more pay than Hester, despite her greater overall years of work experience.

Notwithstanding the above, JPS contends that there is no evidence that these individual defendants did anything to violate the Equal Pay Act, Title VII, or the United States Constitution.

## II. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the nonmovant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (quotation marks and citations omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

## III. Discussion

### A. Equal Pay Act

The individual defendants contend that the EPA claim fails because none of them are "employers" as that term is defined in labor law.

The law in this area is well-established:

> The [statute] defines an employer as any person acting directly or indirectly in the interest of an employer in relation to an employee. The [statute's] definition of employer must be liberally construed to effectuate Congress' remedial intent. This court has held that the [statute's] definition of employer is sufficiently broad to encompass an individual who, though lacking a possessory interest in the employer corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees.

*Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993) (quotation marks and citations omitted).[1] Courts typically look to whether the alleged employer "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Papagolos v. Lafayette Cty. Sch. Dist.*, 972 F. Supp. 2d 912, 919 (N.D. Miss. 2013), *amended on reconsideration* (Nov. 13, 2013) (citations omitted).

That said, "not all elements of the economic-realities test must be satisfied to establish an employment relationship." *Lindsley v. TRT Holdings, Inc.*, No. 3:17-CV-2942-B, 2018 WL 3368930, at *3 (N.D. Tex. July 10, 2018) (citation omitted). "The Fifth Circuit has specifically rejected formalistic labels or common-law notions of the employment relationship in [this] context." *Mkt. v. Extended Stay Am.*, No. 3:15-CV-4065-G, 2016 WL 2914994, at *5 (N.D. Tex. May 19, 2016) (quotation marks and citation omitted). "Instead, the analysis focuses upon the totality of the circumstances, including the economic realities of the challenged employment relationship." *Osborn v. Computer Scis. Corp.*, No. CIV. A-04-CA-158-LY, 2005 WL 5878602, at *2 (W.D. Tex. Sept. 23, 2005) (citation omitted).

Taking the record evidence in the light most favorable to Hester, as the Court must at this stage, the evidence shows a fact dispute as to whether Jones, Luckett, and Lyons were employers under the EPA. Hester has pointed to evidence that Jones and Luckett controlled work schedules; Luckett had general daily supervisory responsibilities; and Lyons controlled salaries and maintained employment records. Luckett and Lyons were personally involved in setting and cutting Hester's pay, while Luckett, Jones, and Lyons were personally involved in setting her

---

[1] "The EPA incorporates the Fair Labor Standards Act's definition of employer and courts' analysis of that definition." *Lindsley v. TRT Holdings, Inc.*, No. 3:17-CV-2942-B, 2018 WL 3368930, at *2 n.5 (N.D. Tex. July 10, 2018) (citations omitted).

comparator's pay. There also is evidence that each of the three was responsible for the first three (out of four) steps in the JPS employment benefits grievance policy, a policy which arguably stymied meaningful oversight of the three by the Superintendent and outright precluded review by the JPS board.

Although a more fulsome review of the evidence at trial may lead to some or all of these defendants not being held liable as employers, the fact dispute littered throughout this record and caused by JPS's inconsistent, conflicting, and changing stories precludes such a finding at this time. *See id.* (denying summary judgment); s*ee also Gee v. Principi*, 289 F.3d 342, 348 (5th Cir. 2002); *King v. Bd. of Trustee of State Inst. of Higher Learning of Miss.*, No. 3:11-CV-403-CWR-FKB, 2014 WL 1276477, at *6 and *8 (S.D. Miss. Mar. 27, 2014); *Dandridge v. Chromcraft Corp.*, 914 F. Supp. 1396, 1403 (N.D. Miss. 1996).

### B. Title VII

The individual defendants argue, correctly, that they cannot be held personally liable under Title VII. Hester concedes as much. Accordingly, her Title VII claims against these defendants are dismissed.

### C. Fourteenth Amendment

Several reasons suggest that the Court should defer consideration of Hester's remaining claims against these defendants. First, the record is devoid of Luckett's testimony, as the record closed before his deposition could be rescheduled.[2] Second, because the remaining claims are analyzed under the standard Title VII framework, *see Sherrod v. Prairie View A & M Univ.*, No. CIV.A. H-10-1858, 2011 WL 843936, at *5 (S.D. Tex. Mar. 8, 2011), it makes more sense to resolve them alongside JPS's own (anticipated) Title VII arguments. And lastly, a mulligan offers

---

[2] His deposition has now been taken.

a graceful path away from the morass of contentious ancillary motions—the motions to strike, for sur-rebuttal, and for excess pages.[3]

Accordingly, this part of the motion is denied without prejudice to its refiling.

## IV. Conclusion

The individual defendants' motion for summary judgment is granted in part and denied in part. The motions to strike, to file sur-rebuttal, and to file excess pages are denied.

**SO ORDERED**, this the 27th day of July, 2018.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE

---

[3] This brief respite should give the parties a moment to reflect and pursue resolution of the remaining claims.